HENRY W. STIKEMAN and ERNST A. SCHUMACHER, Respondents, *v.*
EDWARD J. FLACK, as Treasurer of "Company D" of the Seventy-first Regiment, National Guard of the State of New York,
Appellant.

*Committee of an unincorporated military company — evidence of its authority to bind the company.*

In 1897, Company D of the Seventy-first Regiment of the National Guard of the State of New York, an unincorporated association, appointed a committee to arrange for a trip to Niagara Falls. The trip was abandoned on the outbreak of the Spanish-American war, but the committee was not discharged and continued in existence after the war ended. October 27, 1898, the committee, assuming to act as the "memorial souvenir committee, Company D, 71st Regiment, N. G., N. Y.," entered into a contract with one Elmendorf by which the latter was to prepare a memorial souvenir book of the company, the committee agreeing to allow Elmendorf all moneys received in excess of the actual cost of manufacturing 2,000 copies of the souvenir book, and the sum of $2,000, which was to be paid to the company or to the committee. It appeared that Elmendorf stated at one of the company's meetings that he had made the contract with the company, but was not at liberty to state the particulars; that he had agreed to make the souvenir and would pay the company $2,000, and that he was to assume all liability and that the company would not lose anything. No objection was made to the scheme when this information was given.

*Held,* that the evidence was sufficient to warrant a jury in finding that, although the company did not authorize the committee to make the contract, it subsequently ratified the same, and that it was liable upon a contract made by Elmendorf with a third party for the binding of the book.

INGRAHAM and HATCH, JJ., dissented.

APPEAL by the defendant, Edward J. Flack, as treasurer of "Company D" of the Seventy-first Regiment, National Guard of the State of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 2d day of November, 1900, upon the verdict of a jury, and also from an order, entered in said clerk's office on the 20th day of November, 1900, denying the defendant's motion for a new trial made upon the minutes.

*George B. Class,* for the appellant.

*Grosvenor Nicholas,* for the respondents.

Rumsey, J.:

It is alleged in the complaint that Company D of the Seventy-first Regiment of the National Guard of the State of New York was at the times referred to in this action an unincorporated association consisting of more than seven persons, organized and having its office in the city of New York, and that the defendant, Edward J. Flack, was the treasurer thereof. These allegations are admitted in the answer. It is then alleged that the plaintiff Stikeman and one Wapshare on the 15th of September, 1899, delivered to Company D, at its request, certain goods, wares and merchandise, and performed for it certain services and furnished material, for which the association agreed to pay the sum of $446.50, which was the reasonable value of the goods, services and materials, and that no part of it had been paid. It is further alleged that this claim was afterwards assigned to these plaintiffs, who ask judgment for the amount of the claim. The answer, while admitting the organization of Company D and that Flack was its treasurer, denied upon information and belief the other allegations of the complaint.

It appeared that in September, 1899, one Elmendorf, a member of Company D, employed the plaintiffs' assignors to bind a certain number of souvenir books of that company, and that the agreed price for the binding, boxing and delivery was $446.50; that the work was done and the books were delivered to Elmendorf, and as nothing was paid upon them this action was brought. The defense was that he was not the authorized agent of this company to enter into a contract. It was made to appear that in 1897, before the breaking out of the Spanish war, a committee had been appointed by the company to arrange for a trip by it to Niagara Falls; that on account of the breaking out of the war and the volunteering of this regiment for service, the trip failed, but that the committee was not discharged and continued in existence after the war was closed; that on the 27th of October, 1898, the committee entered into a contract with John B. Elmendorf, by which he, in behalf of the " memorial souvenir committee, Company D, 71st Regiment, N. G., N. Y.," was to assume entire charge and control of the manuscript, advertising and manufacturing of a memorial souvenir, and was to produce the book described in the contract and procure it to be bound. The committee were to allow Elmendorf as remuneration

all money and stock received in excess of the actual cost of manufacturing 2,000 copies, and the sum of $2,000, all the drawings, photographs and electrotypes made for the souvenir, and all revenue accruing from subsequent editions, should any be issued. There was a further agreement as to the way the $2,000 was to be paid to the company or the committee.

That the memorial committee bound themselves by this agreement cannot be denied, and the only question is whether there was sufficient evidence to warrant the jury in finding that this contract was either made by the authority of the company, or that the action of the committee was subsequently ratified by the company after the contract had been entered into.

It was made to appear that the committee was never discharged; that it went on and made this contract for the souvenirs, and that all the members of the company knew that the contract had been made with Elmendorf and that he had contracted to get up the books, and that the committee had authorized him to get it up just as they would any business man or contractor. No objection was made by any of the company; it was understood that the company was to receive the profits; they were willing to take the chances of making the $2,000, and they knew that the souvenir being gotten up would have to be paid for by them if they wanted it. It appeared that it was stated in one of the company meetings by Elmendorf that he had made this contract with the company but was not at liberty to state the particulars; that he had agreed to make the souvenir and would pay the company $2,000, and that he was to assume all liability and that the company would not lose anything. It does not appear that any objection was made to the scheme when this information was given, but, on the contrary, they decided to take the chance of making this money. The true state of the case undoubtedly is, that while the company had not by actual resolution or express affirmative action given any authority to the memorial committee to make this contract, yet they knew that the contract was made, and while they were not aware of the precise terms they did know that the company would share to the extent of $2,000 in the contract, and they were not unwilling to permit this contract to go through. That was sufficient to warrant the jury in coming to the conclusion that although the company may not have originally authorized the com-

mittee to make this contract, yet it was ratified by the company after its existence was made known.. It is not necessary to bind this association that there should be express authority to make the contract by resolution. It may be bound by an implied contract as well as by an express one, and when the evidence is such as to warrant the jury in coming to the conclusion that the joint-stock association, knowing that a contract has been made which may be for its benefit, has accepted it after such knowledge has been given to it, that evidence is sufficient to warrant a determination that it has assumed liability for the contract.

For these reasons the judgment and the order must be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concurred; INGRAHAM and HATCH, JJ., dissented.

INGRAHAM, J. (dissenting):

I dissent. The action is brought under section 1919 of the Code of Civil Procedure, which provides that "an action  * * *  may be maintained against the president or treasurer of such an association to recover  * * *  upon any cause of action for or upon which the plaintiff may maintain such an action  * * *  against all the associates by reason of  * * *  their liability therefor, either jointly or severally. Any partnership or other company of persons which has a president or treasurer is deemed an association within the meaning of this section."

This association, being a company of the National Guard of the State of New York, is not an association engaged in a business which would require that obligations should be incurred to carry out the purposes of its organization. To make its members liable for an indebtedness incurred on its behalf, there must be some evidence that authority was conferred upon the person creating the indebtedness, so that such person has become the authorized agent of the association. It appeared in evidence that Elmendorf represented himself to the plaintiff as a member of Company D, Seventy-first Regiment; but he did not undertake to contract on behalf of Company D. The company never authorized the committee to get up a memorial souvenir, nor was Elmendorf ever authorized by any one, so far as appears, to incur any indebtedness in behalf of the

committee or the company. The committee, which appears to have been appointed for the purpose of conducting a trip to Niagara Falls, constituted itself a "memorial souvenir committee" and entered into a contract with Elmendorf, by which Elmendorf was to work faithfully in behalf of the memorial souvenir committee to carry to a successful issue the project known as the memorial souvenir of Company D. Elmendorf agreed to assume the entire control of the manuscript, advertising and manufacturing of the memorial souvenir, and to turn out a book of not less than 100 pages; and the memorial souvenir committee agreed not to interfere with the management of the memorial souvenir, nor to disclose either directly or indirectly the terms of the contract, and to furnish Elmendorf with letters from the commanding officer of Company D, with the indorsement of the commanding officer of the regiment, granting Elmendorf authority as editor and manager of the souvenir, and further agreed to allow Elmendorf as remuneration all moneys and stock received in connection with the memorial souvenir in excess of the actual cost of manufacturing 2,000 copies and the sum of $2,000. Elmendorf was to receive all revenues accruing from the sale of subsequent editions, should any be issued. The sum of $2,000 was to be paid in three equal payments of $666.66⅔; the first being made thirty days after the date of publication, and the remaining two, thirty and sixty days thereafter. This agreement was signed apparently by four members of the committee, including Elmendorf, and Elmendorf & Co. The terms of this agreement were never, so far as appears, submitted to the company, nor had any of its officers any knowledge of it. So far as the officers of the company were concerned, the only information they had communicated to them was that Elmendorf had made a contract to bring out this book. There is not the slightest evidence to show that the company or any of its officers understood that Elmendorf was acting as the representative or agent of the company or incurring any obligations in its behalf. All the witnesses connected with the company testified that the committee was never authorized by the company to publish this book. The only information ever given to the company or its officers as to this contract was the fact that Elmendorf, as a private individual, was getting

out the book under a contract with the committee, the terms of which were not disclosed, and that he was to present to the company $2,000.

At the end of the trial the defendant moved to dismiss the complaint upon the ground that no agency had been shown. This was denied and the defendant excepted. The court left it for the jury to say whether the evidence justified the finding that the company had conferred any agency upon Elmendorf to make this contract, saying, " The question in dispute which goes to you for determination is whether the order given for the work was the individual order of Corporal Elmendorf, given on his own account and for his own benefit, or was the order of Company D, acting by its memorial committee and by the company's authority. * * * It all hinges on this question of authority from Company D. If Company D authorized this committee to do this, it is liable ; if it did not, it is not."

I am unable to find in this record the slightest evidence that Company D ever authorized Elmendorf to make any contract in its behalf, or that the association as a whole or its individual members were liable for any contract made by Elmendorf. To entitle the plaintiff to maintain this action he must prove that all the members of the association were liable, and it seems to me that there is not the slightest evidence of such liability.

Whether or not this committee with whom Elmendorf made this agreement would be liable for the debts incurred by him, it is not necessary to determine. I do not think that this military organization can be said to have incurred any liability on account of this contract made by Elmendorf.

HATCH, J., concurred.

Judgment and order affirmed, with costs.